Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 3566 | **DATE** | 8/19/2011 |
| **CASE TITLE** | Waldron vs. Atradius Collections, Inc. | | |

**DOCKET ENTRY TEXT**

Defendant Atradius Collections, Inc.'s Motion for Summary Judgment on Count II of Plaintiff David Waldron's Complaint [32] is denied. Status hearing set for 9/20/2011 at 9:00 a.m.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

    Defendant Atradius Collections, Inc. sent Plaintiff David Waldron an offer letter to work as an executive director for the company on October 31, 2007. The letter provided the following severance offer:

> If Atradius Collections terminates your employment, you will be entitled to a severance payment equal to a fixed amount of 6 monthly base salaries less taxes, provided your employment with Atradius Collections exceeds a 12 months [sic] period at the time of Atradius [sic] written confirmation of it's [sic] intentions to terminate and unless your employment is terminated for cause or for unsatisfactory performance, in which case you will not be entitled to any severance payment.

Waldron accepted Atradius' offer and began working at the company in November 2007. Although he was a Maryland resident, Waldron worked from Atradius' office in Itasca, Illinois, and lived in interim housing in Illinois while he retained his Maryland house. Part of his specified job responsibilities, however, required him to travel at least once a month to work in Atradius' Baltimore office to visit with Atradius Trade Credit Insurance, Atradius Collections' largest client.
    Waldron alleges that he performed his job at a high level, received positive annual evaluations, and saw his job duties expand while at the company. However, on October 29, 2009, he received a telephone call from Atradius Managing Director Raymond van der Loos and Atradius Senior Global HR Manager Martijn Kranenburg, notifying him that he was terminated for cause. In response to a November 3, 2009, e-mail from Waldron seeking details about the grounds for his for-cause termination, Kranenburg cited two incidents involving female employees at Atradius—one in February 2009 when Waldron allegedly placed his hands on the shoulders of a female employee and another when he allegedly made an off-color comment to a female employee at a bar—as supporting this decision.
    Waldron filed a two-count complaint in the Circuit Court for Baltimore County, alleging breach of

his employment contract with Atradius and a violation of the Maryland Wage Payment and Collection Law ("MWPCL"). Atradius removed the case to the United States District Court for the District of Maryland based on diversity jurisdiction. [1] The Maryland District Court transferred the case here to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). [11] Discovery proceeded before this Court, and Atradius now moves for summary judgment on Count 2 of Waldron's Complaint [32], which alleges the MWPCL violation.

Summary judgment is proper if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on summary judgment, the Court does not weigh the evidence or determine the truth of the matter, but determines whether a genuine issue of material fact exists that warrants trial. *See id.* at 249. In making this determination, the Court must view all the evidence and draw any reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

Here, genuine issues of material fact preclude summary judgment. The MWPCL provides that "each employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3-505(a). The statute establishes a private right of action to collect unpaid wages if the employer fails to pay the money due within two weeks from the time it was required to make this payment. *Id.* at § 3-507.2. It defines an "employer" as "any person who employs an individual in the State or a successor of the person." *Id.* at § 3-501(b). The Maryland Labor and Employment Code defines "employ" as "(i) allowing an individual to work; and (ii) instructing an individual to be present at a work site." *Id.* at § 3-101(c). A "wage" includes a bonus, commission, fringe benefit, overtime, and "any other remuneration promised for service." *Id.* at § 3-501(c)(2).

Under the plain language of the MWPCL, Atradius is an employer who employed Waldron to work in Maryland. Further, the severance payment constitutes a wage under the law. Atradius specifically instructed Waldron to travel to Baltimore at a minimum once a month to meet with Atradius Trade Credit Insurance. This is documented in the November 8, 2007, letter from van der Loos to Waldron, which amended and clarified the employment agreement between the parties, and the April 6, 2009, e-mail from van der Loos to Waldron and Kranenburg, which affirmed that the parties agreed to Waldron's monthly trips to Baltimore. *See* Waldron Rule 56.1 Statement of Facts, Exs. C and F. Such an arrangement constitutes an employer instructing an individual to work in Maryland. *See Himes Assocs., Ltd. v. Anderson*, 943 A.2d 30, 48 (Md. Ct. Spec. App. 2008) ("The plain language of LE section 3-101 covers the situation in which a company outside of Maryland directs its employee to go to a work site in Maryland. There is nothing unclear about that language."). Atradius had a formal agreement to send Waldron to Maryland at least once a month so that he could engage in important work with the company's key client. Such frequent and regular trips to Maryland by Waldron subject Atradius to potential MWPCL liability. Contrary to the argument presented by Atradius, the Court does not find that public policy warrants a departure from the Maryland court's holding in *Himes*.

Next, Atradius argues that even if it qualifies as an employer who employed Waldron in Maryland under the MWPCL, Waldron's MWPCL claim still fails because his severance payment does not qualify as a "wage." Under the statute, "only when wages have been promised as part of the compensation for the employment arrangement and *all conditions agreed to in advance* for earning those wages have been satisfied, will Section 3-505 requiring payment of wages due apply." *Catalyst Health Solutions, Inc. v. Magill*, 995 A.2d 960, 969 (Md. 2010) (emphasis in original). To support its argument that Waldron's severance is not part of compensation for Waldron's work performed when he was employed by the company, Atradius cites cases in which the severance package was conditioned on future actions by an

| STATEMENT |
|---|

employee. These cases fail to address the issue in this case. In *Stevenson v. Branch Banking & Trust, Corp.*, the court found that the plaintiff's severance pay did not fall under the MWPCL because it was a payment for her not to compete following her termination. 861 A.2d 735, 749–50 (Md. Ct. Spec. App. 2004). In *Makowski v. Bovis Lend Lease, Inc.*, the MWPCL did not apply to plaintiff's severance because the payment was conditioned on the plaintiff's release of claims against Bovis and compliance with a nondisclosure agreement. 2011 WL 1045635, at *10 (D. Md. Mar. 17, 2011).

  Here, Waldron's severance was not conditioned on his taking or abeyance from taking any actions after his employment. Rather, it served as compensation for his service to the company, and thus qualifies as a wage under the MWPCL. *See Medex v. McCabe*, 811 A.2d 297, 302 (Md. 2002) ("[I]t is the exchange of remuneration for the employee's work that is crucial to the determination that compensation constitutes a wage. Where the payments are dependent upon conditions other than the employee's efforts, they lie outside of the definition.") (internal citation omitted). Waldron's severance was in no way conditioned on his post-employment activity. Thus, it qualifies as "any other remuneration promised for service." Md. Code Ann., Lab. & Empl. § 3-501(c)(2).

  Further, summary judgment is improper because genuine issues of material fact exist concerning the condition upon which Waldron would not receive his severance—termination for cause or unsatisfactory performance. This is the core contested issue in this case. Waldron argues that he was not let go for cause, and that the two incidents Atradius cites to support its decision to terminate are merely pretextual. He provides facts such as his positive yearly evaluations and expanded job responsibilities to support his position. Atradius contends that the two incidents between Waldron and female employees warrant its for-cause dismissal. This dispute precludes summary judgment, as a jury must decide this contested factual issue.

  As such, Atradius' Motion for Summary Judgment on the MWPCL claim in Count 2 of Waldron's Complaint is denied.